## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **JOHN C. BENNETT, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 07-1951 (RCL)** |
| | ) |
| **HILDA SOLIS,** | ) |
| **SECRETARY OF LABOR** | ) |
| | ) |
| **Defendant.**[1] | ) |

_____)

### MEMORANDUM OPINION

Plaintiff John C. Bennett, Jr., a former employee in the Office of Federal Contact Compliance Programs ("OFCCP") of the Department of Labor ("Department"), brings this action against defendant Hilda Solis in her official capacity as Secretary of Labor. Plaintiff alleges that the Department in willfully terminating his employment discriminated against him on account of his race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and on account of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. This matter now comes before the Court on the Department's Motion [35] for Summary Judgment. Upon consideration of the motion, the opposition and reply thereto, the entire record herein, and the applicable law, the Court concludes that the Department's motion should be granted.

## I.    FACTUAL BACKGROUND

Plaintiff John C. Bennett, Jr., was, at all times relevant up to his termination, a GS-13 Senior Compliance Officer in the Branch of Quality Assurance ("BQA") in the Office of Federal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Hilda L. Solis, Secretary of Labor, is substituted for her precedecessor, Elena L. Chao.

Contact Compliance Programs ("OFCCP") of the Employment Standards Administration, a component of the U.S. Department of Labor ("Department"). (Bennett Decl. ¶ 3.) Plaintiff is a Caucasian male and was 71 years old when he was discharged. (*Id.* at ¶ 2.) He had been an employee of the OFCCP for 30 years. (*Id.* at ¶ 3.) Prior to his removal, plaintiff was assigned along with others in his division to work on a project named "Project to Assist Regions Improving Investigations," also referred to as the Systemic Discrimination Project, which plaintiff understood was a "major project" that was considered "important" within the division. (*Id.* at ¶4; Def.'s Mot. for Summ. J. ("Def.'s Motion") Ex. A [35-2] at 108.) This project was a two-phase audit in which the purpose of phase one was to ascertain the "predictors" of a federal contractor engaging in systemic discrimination in its employment practices. (Deutermann Dep. at 43:5-9, 58:16-21, Ex. 7, Sept. 22, 2009.) The purpose of phase two was aimed at identifying the particular investigative techniques used by compliance officers. (*Id.*)

Plaintiff was notified on May 27, 2005, of a decision to remove him from his position with the Department and from the Federal Service. (Deutermann Dep. Ex. 2.) The decision to remove plaintiff was made solely by Cynthia Deutermann, who had recently been appointed to the position of Acting Deputy Director of the Division of Program Operations in OFCCP. (Deutermann Decl. on Summ. J. Mot. ("Deutermann Decl.") ¶¶ 1, 17.) Ms. Deutermann was appointed to this position just prior to her assignment as the deciding official in this matter. (Deutermann ROI Aff. ¶¶ 3-4.) Before receiving this appointment, Ms. Deutermann was not in the chain of command of plaintiff, and has no recollection of how she was selected to be the deciding official in this matter. (Bennett Decl. ¶ 20; Deutermann Dep. 24:1-25:3.) Ms. Deutermann was 63 years old when she terminated plaintiff and, like plaintiff, is Caucasian. (Deutermann Decl. ¶ 19.) Ms. Deutermann based her decision to remove plaintiff on a "Proposal

to Remove" dated March 11, 2005, that had been prepared by plaintiff's immediate supervisor, Ms. Carla Johnson, following plaintiff's placement on a Performance Improvement Plan ("PIP") for the period from May 7, 2004 through November 24, 2004. (*Id.* at ¶ 2.) Prior to acting as the deciding official in plaintiff's case, Ms. Deutermann had no previous experience with and knew little about PIP's or decisions on proposed removals of federal employees. (Deutermann Dep. 28:5-29:10.)

The Proposal to Remove contained a narrative by Ms. Johnson describing plaintiff's various performance deficiencies including a lack of responsiveness, failure to complete projects and meet deadlines, incorrect and incomplete execution of forms, a lack of understanding of the compliance process, and other deficiencies. (Deutermann Dep. Ex. 12 and Atts.) In addition to the narrative, the Proposal to Remove contained numerous attachments including examples of at least twelve case files in which plaintiff's performance was deficient, e-mail exchanges, and periodic evaluations during the PIP period. (Deutermann Decl. ¶ 5, Ex. 2 at 3-4.) Specifically, Ms. Deutermann concluded that plaintiff had failed to meet a quantitative performance standard for case reviews during his PIP which left him below the acceptable performance level both in terms of quality and quantity of work. (Deutermann Dep. 55:8-56:2; Deutermann Decl. Ex. 2 at 2.) This quantitative performance standard required plaintiff to complete 60% of all casework assigned to him at an "acceptable" level "upon first submission." (Deutermann Dep. Ex. 12 at Bennett 000013, 000017.) Regarding the qualitative performance standard, Ms. Deutermann found that plaintiff failed to manage his time sufficiently to meet the 60% threshold. (Deutermann Dep. Ex. 12 at 2.) Ms. Deutermann also determined that the information in the Proposal to Remove established that plaintiff had continuously failed to raise his performance to the required level, that this failure jeopardized the completion of an important project (the

Systemic Discrimination Project) which placed an unjustifiable burden on other employees, and that plaintiff had been put on notice of his deficiencies and had been given ample opportunity to improve his performance. (Deutermann Decl. ¶¶ 6-7.)

Based on Ms. Deutermann's review of the information contained in the Proposal to Remove, as well as plaintiff's response in which he did not attempt to rebut or provide any documentation to contradict the assertions in the Proposal regarding plaintiff's performance, she determined that plaintiff failed to raise his performance to the level required by the PIP and thus should be removed from his position and the Federal Service. (*Id.* at ¶¶ 5-7.) Plaintiff was notified of this removal decision on May 27, 2005, and the decision became effective on May 28, 2005. (Deutermann Dep. Ex. 2.)

In the same time period, Ms. Deutermann was presented with a Proposal to Remove for a different employee working in the same office as plaintiff. (Deutermann Dep. Ex. 10.) This employee, Ms. Ansonia Harris, is an African American female who was 68 years old and a GS-12 Compliance Officer when her supervisor Mr. Joseph Jackson, Jr. recommended that she be removed from federal service because she failed to raise her performance to the required level under a PIP that was identical to plaintiff's. (Deutermann Dep. Ex. 10; Pl.'s Opp'n to Def.'s Mot. For Summ. J. ("Pl.'s Opp'n") [47] at 4.) Unlike in plaintiff's case, however, Ms. Deutermann decided on August 18, 2005 to not remove Ms. Harris as a result of "insufficient documentation" for her "to make a determination" to terminate Ms. Harris. (Deutermann Dep. Ex. 9 at 1-2.) Plaintiff argues that Ms. Deutermann's decision to not terminate Ms. Harris despite her deficient performance is evidence of defendant's discriminatory treatment of him by way of his allegedly unlawful termination. (Pl.'s Opp'n [47] at 3-6, 13-17.)

## II. __SUMMARY JUDGMENT STANDARD__

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party's evidence is to be believed, and all reasonable inferences from the record are to be drawn in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 255 (1986). It is not enough, however, for the non-moving party to show that there is "*some* factual dispute," because "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247-48. In addition, summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. In deciding whether summary judgment is warranted for the defendant, the Court will consider all relevant evidence presented by the plaintiff and defendant. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). Finally, in an employment case, it is the function of the jury and not the judge to weigh evidence and make credibility determinations. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000); *see George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) ("at the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts").

## III. __TITLE VII AND ADEA CLAIMS__

Plaintiff was terminated from employment by the Department and has alleged racial and gender discrimination claims against defendant in violation of Title VII of the Civil Rights Act,

42 U.S.C. § 2000e *et seq*. Plaintiff also claims that the Department discriminated against him on account of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). The Department contends that it terminated plaintiff not due to discrimination but rather for a legitimate reason, namely that plaintiff was put on a PIP due to inadequate work product, failed to raise his performance to the minimum acceptable level under the PIP and thus was justifiably terminated. (Deutermann Dep. Ex. 2 at 1-2, 6, Ex. 12 at 1-2.) As set forth below, the Court agrees with the Department and will grant the Department's motion for summary judgment on both claims.

### A. Legal Standards

The Supreme Court has established a burden-shifting approach that applies to employment discrimination cases when the plaintiff lacks direct evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). This approach, the *McDonnell Douglas* framework, applies to both Title VII and ADEA claims. *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)). To proceed under the *McDonnell Douglas* standard, a plaintiff "must carry the initial burden under the statute of establishing a prima facie case of [race, sex, age] discrimination." *McDonnell Douglas Corp.*, 411 U.S. at 802.

In *Brady v. Office of Sergeant at Arms*, the D.C. Circuit further clarified the District Court's analysis in Title VII disparate-treatment suits. 520 F.3d 490, 494 (D.C. Cir. 2008). Stating that the *prima facie* determination had become a "largely unnecessary sideshow," the court held that in Title VII disparate-treatment suits where an employee has suffered an adverse

employment action,[2] the District Court on summary judgment need not determine if the plaintiff presents a *prima facie* case of discrimination if the defendant has asserted a legitimate, non-discriminatory reason for the challenged actions. *Id.* As a result, this Court is left with "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

Thus, the Court must first determine whether defendant has articulated a legitimate non-discriminatory reason for the plaintiff's termination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. If so, the Court must then examine the evidence to determine whether a reasonable jury could deem this asserted reason mere pretext, designed to conceal intentional race, sex, and/or age discrimination. *Brady*, 520 F.3d at 494; *see also Chappell-Johnson v. Blair*, 574 F. Supp. 2d 87, 96 n. 9 (D.D.C. 2008), *aff'd*, 358 Fed. App'x 200 (D.C. Cir. 2009) (applying Brady's methodology to claims under the ADEA).

Subsequent to *Brady*, the Supreme Court further focused the ADEA standard. It held, "[a] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009). Put differently, it is not enough that age was one motivating factor in an adverse employment action; rather, it must be the case that the adverse action would not have occurred in the absence of age as a consideration. *See id.* at 2350. Per *Brady* and *Gross*, the Court will decide whether sufficient

---

[2] Termination of employment constitutes an adverse employment action. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006).

evidence exists for a reasonable jury to find that defendant's proffered reasons for terminating plaintiff mask discriminatory intent that rendered age the but-for cause of plaintiff's termination.

*B. Analysis*

**1. Defendant has articulated a legitimate non-discriminatory reason for plaintiff's termination.**

Defendant claims that it terminated plaintiff pursuant to the Proposal to Remove which was based on plaintiff's work product or lack of work product during the PIP period. (Deutermann Dep. Ex. 2 at 1-2, Ex. 12 at 1-2 (detailing plaintiff's numerous performance deficiencies).) This is analogous to the reason preferred by the defendant Department of Agriculture in *Chowhudry v. Schafer*, in which this Court found that the Department's reason was legitimate and non-discriminatory. 587 F. Supp. 2d 257 (D.D.C. 2008). Like in *Chowhudry*, plaintiff was placed on a PIP and was given an opportunity to raise his performance to an acceptable level but failed to do so. (*Id.* at 264; Deutermann Dep. Ex. 2 at 1-2.) In addition, plaintiff has not rebutted or refuted the substance of this legitimate non-discriminatory reason offered by defendant for his dismissal. (Reply Mem. in Supp. of Def.'s Mot. for Summ. J. "Def.'s Reply" [52] at 1-2; Deutermann Decl. ¶ 6.) Thus, defendant has met his burden of articulating a legitimate non-discriminatory reason for terminating plaintiff and now the Court must determine whether a reasonable jury could deem this asserted reason mere pretext. *Chowhudry*, F. Supp. 2d at 587.

**2. Plaintiff's evidence is insufficient to establish pretext for discrimination.**

Plaintiff has argued that defendant's alleged performance-based reasons for terminating him were a mere pretext and concealed the real reason for his termination, namely discrimination

on account of race, sex, and age. (Pl.'s Compl. [1] at 1-2; Pl.'s Opp'n [47] at 3-7.) As set forth below, this Court does not believe that a reasonable jury could find that defendant's articulated reason was pretextual.

Evidence of pretext may include variant treatment of similarly situated employees, discriminatory statements by decision makers, and irregularities in the stated reasons for the adverse employment decision. *Brady*, 520 F.3d at 495 n. 3. In addition, "a jury can infer discrimination from the combination of … any evidence the plaintiff presents to attack the employer's proferred explanation for its actions" and from "any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory evidence or attitudes on the part of the employer) …." *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999).

Plaintiff argues that a reasonable jury could reject defendant's explanation for his termination on any of five separate bases. First, plaintiff contends that defendant's discrimination against him is proven by way of a comparison between defendant's treatment of him and Ms. Harris, a supposedly similarly situated employee. As defendant points out, however, it should be noted from the outset that this comparator evidence undermines plaintiff's claim of age discrimination because Ms. Harris was a similar age to plaintiff and also failed a similar PIP but was not terminated. (Def.'s Mot. for Summ. J. [35] at 18-19; Bennett Decl. ¶¶ 2, 17-18.) Second, plaintiff contends that the PIP he was subjected to was utterly subjective and thus constituted a pretext for discrimination. Third, plaintiff offers so-called evidence that allegedly proves a discriminatory attitude on the part of the OFCCP as an organization in general. Fourth, plaintiff offers evidence with which he seeks to show that plaintiff was a good employee leading up to the PIP period, thus suggesting that the PIP was instigated for discriminatory reasons. Fifth, plaintiff

seeks to discredit Ms. Deutermann in various ways and in effect tries to show that Ms. Deutermann's treatment of plaintiff is evidence of discrimination. As set forth below, the Court rejects all five of plaintiff's arguments.

## A. Plaintiff and Ms. Harris Are Not Similarly Situated

Plaintiff argues that evidence of discriminatory bias on the part of defendant is proven by comparing defendant's treatment of plaintiff with defendant's treatment of Ms. Harris, another Compliance Officer in the OFCCP who was of a similar age to plaintiff but, unlike plaintiff, was African American and female, which plaintiff alleges was what distinguished their disparate treatment by defendant. (Pl.'s Opp'n [47] at 22-27.) Plaintiff and Ms. Harris were both placed on similar PIP's, both were the subjects of Proposals to Remove that were reviewed by Ms. Deutermann, and only plaintiff was terminated, even though plaintiff claims that Ms. Harris' performance deficiencies "were far more damning" than were his. (*Id*. at 15.)

Plaintiff has attempted to produce evidence suggesting that defendant treated other employees of a different race and sex more favorably in the same factual circumstances. *Brady* acknowledged that this is a tactic often used by employee/plaintiffs to prove pretext on the part of the employer/defendants. 520 F.3d at 495. For this tactic to succeed, however, the plaintiff and the comparator employee (in this case, Ms. Harris) must be "similarly situated." *Id*. Regarding this "similarly situated" requirement, an inference of discrimination should not be drawn from disparate treatment of comparable employees unless "all of the relevant aspects of [his] employment situation [are] 'nearly identical'" to those of the comparator. *Neuren v. Adduci, Mastriani, Meeks, & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995); *Evans v. Holder*, 618 F. Supp. 2d 1, 11 (D.D.C. 2009). In addition, the Second Circuit has stated that "whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island*

*R.R.*, 230 F.3d 34, 39 (2d. Cir. 2000). However, in *Udoh v. Trade Ctr. Mgmt. Assoc.'s* the court indicated that for a finding that two employees were similarly situated, a plaintiff must generally show that the more favorably treated coworker "dealt with the same supervisor, ha[s] been subject to the same standards and ha[s] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." 479 F. Supp. 2d 60, 64 (D.D.C. 2007). As discussed below, based on the specific facts of this case, no reasonable jury could conclude that plaintiff and Ms. Harris are similarly situated.

Some of the facts of this case tend to suggest that plaintiff and Ms. Harris were similarly situated. First, Ms. Deutermann decided both plaintiff and Ms. Harris' cases based on their work on the Systemic Discrimination Project during their respective PIP periods. (Deutermann Decl. ¶¶ 2-3, 8.) Second, the performance standards specified in plaintiff's and Ms. Harris' PIP's were identical. (Deutermann Dep. Ex. 10 at Bennett 000001355-57, Ex. 12 at Bennett 000020-23.) Third, unlike the regular performance standards of Compliance Officers which never specified a number of cases that had to be produced in any particular period of time, the PIP's on which plaintiff and Ms. Harris were placed contained quotas of cases they were required to produce. (Deutermann Dep. Ex. 12 at Atts. 1, 4; Bennett Decl. ¶ 15.) Fourth, both plaintiff and Ms. Harris apparently received satisfactory performance ratings from their supervisors prior to the periods leading up to the issuance of their respective PIP's. (Copening ROI. Aff. at 2-3; Deutermann Dep. Ex. 10 at 10.) Fifth, both plaintiff and Ms. Harris made some similar objections to their PIP's, namely that they were subjective and contained vague criteria. (Deutermann Dep. Ex. 11 at 5, Ex. 13 at 1, 5-6; Pl.'s Opp'n [47] at 11.)

On the other hand, several facts of this case cut against the idea that plaintiff and Ms. Harris were similarly situated as comparators, and consideration of these facts compels a finding that the two were not similarly situated. First, although plaintiff and Ms. Harris both worked in the same office, they held different positions; plaintiff was a GS-13 Senior Compliance Officer while Ms. Harris was a GS-12 Compliance Officer. (Deutermann Decl. ¶¶ 1, 12; Deutermann Dep. Ex. 4 at ¶ 12.) This tends toward a finding that the two weren't similarly situated. *See Barbour v. Browner*, 181 F.3d 1342 (D.C. Cir. 1999) (concluding that two EPA employees with similar job descriptions, one a GS-12 and the other a GS-13, were not similarly situated); (Deutermann Dep. Ex. 4 at ¶ 12 (stating that Ms. Harris as a GS-12 Compliance Officer would be expected to perform at a different level than a Senior Compliance Officer at the GS-13 level); Deutermann Dep. Ex. 13 at 5 (a statement from Ms. Harris arguing that the performance standards and critical elements in her PIP were inappropriate for someone at the GS-12 level "and were only appropriate for someone at least at the GS-13 level."); Bennett Decl. ¶¶ 5-6 (detailing the myriad of responsibilities that plaintiff held as a Senior Compliance Officer).)

Second, unlike Ms. Harris, plaintiff was a complainer, which detracts from the idea that he was terminated because of discriminatory reasons. (*See* Cambetta ROI Aff. at ¶¶ 8-9 (stating that plaintiff referred to the Division in which he worked as a "Howard university sorority" and that plaintiff was dissatisfied that his supervisor Ms. Johnson had promoted at least two African American females whereas his requests for fair treatment and promotion were disregarded). Third, plaintiff during his PIP period turned in most if not all of his cases late whereas all of Ms. Harris' cases during her PIP period were turned in by the proper deadline or earlier, further demonstrating Ms. Harris' superior work ethic. (Deutermann Dep. Ex. 4 at 5, Ex. 12 at Bennett 000017, Att. 7 at Bennett 000089.)

Fourth, when confronted with the Proposal to Remove, Ms. Harris hired an attorney and defended herself on the merits while plaintiff did not do this but rather refuted the methodology of his PIP as being subjective and pretextual. (Deutermann Dep. Ex. 13; Deutermann Decl. Ex. 3; Cambetta ROI Aff. at ¶ 9.) Ms. Harris' defense on the merits influenced Ms. Deutermann's decision not to terminate her, as Ms. Deutermann explicitly stated that she did not have adequate documentation to confirm Ms. Harris' supervisor's allegations made in the Proposal to Remove regarding Ms. Harris' supposedly deficient performance, and as discussed below, Ms. Harris was able to refute some of the allegations made by her supervisor as contradictory and incorrect. (Deutermann Dep. Ex. 9 at 000001289-91 (including the submission of evidence by Ms. Harris which tends to directly rebut several of her supervisor's allegations regarding her performance).) In addition, in response to the Proposal to Remove, Ms. Harris submitted to her supervisor letters of recommendation from coworkers that spoke of her work ethic, team player attitude, and the significant contribution that she made to the DPO. (Deutermann Dep. Ex. 13 at Bennett 00001328-1332.)

By contrast, it appears from the record that plaintiff during the PIP period did not try to improve his performance by obtaining help from his supervisor or others in the office, whereas Ms. Harris did seek such help and did attempt to improve. (Deutermann Dep. Ex. 12 at Bennett 000016 (plaintiff's supervisor stating that he stopped by plaintiff's cubicle on various occasions to offer assistance but plaintiff declined and instead chose to work on personal projects such as vacation reservations); Deutermann Dep. Ex. 13 at Atts. 2-3 (email and letter by Ms. Harris to managers requesting the Systemic Discrimination Training that she failed to receive but other team members had received).) The record reflects the numerous attempts by plaintiff's

supervisor to assist plaintiff in raising his performance to the required level. (Deutermann Dep. Ex. 12 at Att. 7.)

Fifth, Ms. Deutermann decided to not terminate Ms. Harris because she determined there was "insufficient documentation for" her "to make a determination," whereas Ms. Deutermann felt there was sufficient documentation to support her decision to terminate plaintiff. (Deutermann Dep. Ex. 3 at 5, Ex. 9 at 1-2; Deutermann Decl. ¶¶ 1-5, 10, 14.) It was Ms. Deutermann's understanding that her job was to evaluate the Proposal to Remove on a stand alone basis, without following up with the supervisor who authored the Proposal. (Deutermann Decl. ¶ 3.) In addition, it was Ms. Deutermann's understanding that "a supervisor's description of an employee's inadequate performance was not enough to support a removal; rather, the supervisor's assertions of inadequate performance had to be supported by documentation from the period of the PIP that could be independently evaluated and considered on making the removal decision." (*Id.*) As defendant noted, Ms. Deutermann testified that she obtained information about the procedures to follow from the agency's personnel office, and plaintiff has offered no evidence suggesting that Ms. Deutermann's understanding of this was incorrect.[3] (Deutermann Dep. at 27:15-28:4, 92:3-15; Def.'s Reply [52] at 5.)

Upon reviewing Ms. Harris' Proposal to Remove as well as the accompanying documents and Ms. Harris' response to the Proposal, Ms. Deutermann determined that Ms. Harris' supervisor Mr. Jackson "did not provide sufficient documentation of Ms. Harris' work product during the PIP period… to support the assertions of poor performance he made in her proposal." (Deutermann Decl. ¶10.) Defendant points to the Deutermann Declaration and cites several aspects of this inadequate documentation, none of which plaintiff has disputed. (Def.'s Reply

---

[3] At least one court in our circuit has found that "'[o]nce the employer has articulated a non-discriminatory explanation for its action,' the Court will not find pretext 'if the employer honestly believes in the reasons it offers.'" *Willingham v. Gonzales*, 391 F. Supp. 2d 52, 63 (D.D.C. 2005).

[52] at 6-7; Deutermann Decl. ¶¶ 10-12, 14-15; Deutermann Dep. Ex. 4 at 5.) In particular, Mr. Jackson provided no examples of Ms. Harris' work product for the first 90 days of the PIP, but instead included examples of work product prepared by Ms. Harris before the PIP period started. Deutermann Decl. ¶ 10. In addition, "Mr. Jackson also reported that Ms. Harris had not been provided with sufficient 'substantive assignments' to assess her performance during that three-month period."[4] (*Id*.) Furthermore, Mr. Jackson made some statements in his Proposal to Remove that contradicted each other, including a large discrepancy concerning the number of case files for which Ms. Harris was responsible during the PIP period. (*Id*. at ¶ 12; Deutermann Dep. Ex. 12 (At one point in the Proposal to Remove Mr. Jackson stated that Ms. Harris had a total of 31 case files to review to demonstrate her ability to perform under the PIP, but on the very same page Mr. Jackson wrote that Ms. Harris was only assigned to work on 11 files during the PIP period.).) This contradiction further supports Ms. Deutermann's conclusion that Mr. Jackson failed to properly document his assertions of Ms. Harris' poor performance and also supports Ms. Deutermann's decision not to terminate Ms. Harris.

In contrast to Ms. Harris' situation, plaintiff presented no such evidence to rebut his supervisor's claims of his inadequate performance. (Deutermann Decl. ¶ 6.) In addition, plaintiff's supervisor Ms. Johnson in her Proposal to Remove plaintiff "was diligent in documenting [plaintiff's] performance during the course of the PIP including written performance feedback specifically addressing the individual cases… [and] also provided documentation of meetings to discuss work products and offers to provide assistance to [plaintiff] if he felt that it was needed. (Deutermann Dep. Ex. 4 at 5.) Therefore, Ms. Deutermann independently determined that there was enough documentation accompanying plaintiff's

---

[4] As this three month period was a majority of the total five month PIP period, this was a significant deficiency. (Deutermann Decl. ¶ 10.)

Proposal to Remove with which to find that plaintiff had failed to raise his performance to the level required by the PIP. (Deutermann Decl. ¶ 5.)

Contrary to plaintiff's claim that "defendant is hard-pressed to explain its disparate treatment of Mr. Bennett and Ms. Harris[,] [i]n fact, it did not even try[,]" defendant has produced ample justification and evidence explaining this disparate treatment. (Pl.'s Opp'n [47] at 5.) For all of the aforementioned reasons, the Court finds that plaintiff and Ms. Harris were not similarly situated and thus their disparate treatment is not evidence of discrimination on the part of defendant.

## B. Subjectivity of the PIP

Plaintiff also argues that pretext of discrimination is evidenced by the "subjectiv[ity]" of the PIP that he was forced to undergo. (Pl.'s Opp'n [47] at 11.) The Court does not, however, believe a reasonable jury could find that the PIP was subjective, and even if a reasonable jury could conclude this, it is not the case that a finding of discrimination would necessarily follow from this conclusion. The Court will cover some threshold matters and will then examine the plaintiff's arguments in favor of the PIP's subjectivity.

As defendant notes, plaintiff does not dispute that the standards and procedures in the PIP's of both plaintiff and Ms. Harris were identical, and since plaintiff and Ms. Harris are members of different races and genders, plaintiff's allegations of race and gender discrimination by defendant are undermined if not negated. (Def.'s Reply [52] at 12; *see Forman v. Small*, 271 F.3d 285, 291 (D.C. Cir. 2001) ("the question before the court is limited to whether Dr. Forman produced sufficient evidence of … discrimination, not whether he was treated fairly.").) In addition, plaintiff had the opportunity to challenge these standards and procedures by filing a union grievance or appeal to the Merit Systems Protection Board (as his Proposal to Remove

advised him to do), but he chose neither option. (Def.'s Reply [52] at 12; Deutermann Decl. at Bennett 00298.) Further, defendant aptly points out that throughout plaintiff's complaints on the supposed subjectivity of the PIP, plaintiff "does not establish that the procedures violated any agency regulation or any other legal requirement." (Def.'s Reply [52] at 2.) The Court will now examine the arguments plaintiff uses to attempt to demonstrate the subjectivity of his PIP.

Plaintiff argues that the numerical standards contained in his PIP were arbitrary because they were changed during the term of the PIP (from 80% to 60% production rates) and because there were no numerical standards in their work plans or any requirement that work be acceptable on initial supervisory review. (Deutermann Dep. Ex. 12 at Atts. 1, 4, Ex. 10 at Bennett 000001345-50.) Plaintiff argues that this is particularly prescient because he only missed the 60% cutoff by a 3% margin. (Pl.'s's Opp'n [47] at 13-14.) However, plaintiff has offered no evidence or law which suggests any illegality or impropriety in the practice of an employer requiring an employee during a PIP to submit different work product than he normally would were he not on a PIP, and the Court is not aware of any such law. In addition, plaintiff does not dispute that he missed the 60% mark, as noted above, and he does not dispute that 60% is an objective criterion; nowhere in plaintiff's two responses to his Proposal to Remove does he allege that 60% is a subjective criterion, rather he claims that it is an arbitrary number, which is not an effective argument. (*Id.*; *see* Deutermann Decl. Ex. 3; *Forman*, 271 F.3d at 291 (stating that absent proof of discrimination, whether an employee was treated fairly is irrelevant).)

Plaintiff also argues that the timeframes contained in his PIP were arbitrary because he "was required to complete his reviews on very short deadlines." (Pl.'s Opp'n [47] at 11; Deutermann Dep. Ex. 12 at 103, 107, 109.) As defendant points out, however, plaintiff has not offered any evidence showing or suggesting that other Department employees, including Ms.

Harris, were subjected to different numerical criteria during their performance reviews or were not required to complete their work on short deadlines. (Def.'s Reply [52] at 12.)

Furthermore, the union representative, Ms. Copening, thought that plaintiff's PIP "was flawed in that it provided no measurable or quantifiable methods to ensure Mr. Bennett's performance. The language was couched in terms of his work being 'acceptable' to his supervisor. To say that it was subjective would be a gross understatement." (Copening ROI Aff. [47-6] at 3.) This is a misstatement of the criteria used in the PIP, however, because as defendant points out, the PIP states objectively measurable criteria in the sentences preceding the "acceptable" to the supervisor language. (Def.'s Reply [52] at 13 n. 7.) Specifically, the PIP required that plaintiff among other things:

> "must correctly complete the forms that were developed for this audit to gather all pertinent data. [Plaintiff] must analyze the reasons that the investigation found systemic discrimination and analyze the initial indicators that did not materialize. [Plaintiff] need[s] to review all documents before they are submitted to ensure the consistency and the accuracy of the data."

(Deutermann Decl. Att. 1 at Bennett 000022.) This language can be contrasted with other language that our Circuit and others have deemed subjective in the context of judging performance, namely "dedicated", "enthusiasm", "interpersonal skills", and "being upbeat." *See, e.g. Aka v. Wash. Hosp. Ctr.*, 165 F.3d 1284, 1298 (D.C. Cir. 1998); *Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). So, contrary to plaintiff's assertion, his PIP's criteria were not subjective, but rather required the supervisor to judge the employee's work product based on objective standards in order to ensure that the employee was doing his job properly. Plaintiff was not doing his job properly, which is why defendant terminated him from the federal service. (Deutermann Dep. Ex. 2.)

Plaintiff also argues that evidence of the subjectivity of his PIP is demonstrated by the fact that the requirements he was made to undergo did not exist prior to his PIP nor did they exist after it. (Bennett Decl. ¶ 14; Bennett Dep. Ex. A at 79 (alleging that the Systemic Discrimination Project was invented to weed him and Ms. Harris out because "there had never been [such] a project before" and "the project was never done again.").) However, the plaintiff in *Forman v. Small* made a similar argument concerning a condition of his desired promotion to complete "another major scholarly work" even though this "supposedly critical requirement vanished in later years . . . and was not generally a requirement for promotion," and our Circuit found this to be insufficient evidence to show pretext. F.3d 285, 293 (D.C. Cir. 2001). In addition, as discussed above, it is not unheard of that an employer would subject an employee during a disciplinary period such as a PIP to heightened standards of performance, as an employee during a PIP has already shown his performance to be deficient and the employer has an interest in ascertaining whether the employee can perform his job in an adequate manner.

Also, plaintiff states that there is no indication how or why the 60% production requirement properly measured the quantity of work product produced by him during the PIP since Ms. Deutermann admitted that one case evaluation in the Project "could take as little as a day" or "could take a week," depending on the size and organization of the case file. (Deutermann Dep. 49:19-50:7.) This is not an attack on the subjectivity of the requirement, however, since 60% is obviously an objective number, but rather is an assertion of arbitrariness, which as discussed above is an ineffective argument. *Forman*, 271 F.3d at 291 (stating that whether an employee was treated fairly is irrelevant). In addition, as defendant points out, plaintiff has offered no evidence that his colleagues received better organized files or received more time to complete them. (Def.'s Reply [52] at 3.)

Finally, plaintiff makes much of his contention that his analysis of case files during the PIP "was not truly measurable" since he claims that, outside of the PIP, two compliance officers were assigned to review the same case file in "in recognition of the fact that … responses could differ from one another", whereas he contends that he was solely responsible for his case file analysis during the PIP period. (Pl.'s Opp'n [47] at 11-12, 15.) Relatedly, plaintiff contends that "in the normal course of OFCCP's business outside the PIP process, management assigned compliance officers in teams to review case files." (*Id*. at 15.) As defendant points out, however, both of these contentions are misstatements of the record, as they are both based on deposition testimony of Ms. Deutermann that was referring to the development and design stages of the Systemic Discrimination Project that took place in February 2004, rather than when it was actually implemented by compliance officers. (Def.'s Reply [52] at 15-16; Deutermann Dep. at 76:8-79:6.) Plaintiff himself admitted that the Project went through design stages in which brainstorming sessions often attended by staff were conducted, and even cited to the same deposition exhibit (Exhibit 6) that Ms. Deutermann referred to as being from the design state of the Project. (Pl's Opp'n [47] at 9.) To further illustrate this, when Ms. Deutermann was asked in her deposition whether this dual review is how the Project proceeded, she testified "No, I believe that the project proceeded with individuals looking at case files on their own." (Deutermann Dep. at 76:8-79:6.)

All of the preceding analysis of this section has demonstrated the unlikelihood that a reasonable jury could find the standards and procedures of plaintiff's PIP to be subjective and thereby a pretext for discrimination; however, even if a jury did think that the PIP criteria was subjective, this is not fatal to granting defendant's motion. Our Court of Appeals has acknowledged that an employer's strong reliance on subjective criteria may mask discrimination,

but it has also stated that "employers may *of course* take subjective considerations into account in their employment decisions." *Aka*, 156 F.3d at 1298. Also, multiple courts have recognized that where "reliance on [subjective factors] is modest, and the employer has other, well-founded reasons for the employment decision, summary judgment for the defendant may be appropriate." *Id.*; *see Gonzales v. Holder*, 656 F. Supp. 2d 141, 147 (D.D.C. 2009) ("A subjective reason can be legally sufficient, legitimate and non-discriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion."). As previously discussed, defendant produced in plaintiff's Proposal to Remove, as well as the decision on that proposal, a legitimate and non-discriminatory reason for terminating plaintiff (which plaintiff has not disputed), so even if a reasonable jury thought that some of the PIP criteria were subjective, this would not require a denial of defendant's motion.

### C. Discriminatory history of OFCCP and management

In addition to direct discriminatory action by an employer, evidence of discriminatory statements or attitudes on the part of an employer can demonstrate that the employer made an adverse employment decision for a discriminatory reason. *Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008). Plaintiff here asserts that in practice the "OFCCP's affirmative action program is designed to protect minorities and women" and does not normally benefit non-minority Caucasian males. (Pl.'s Opp'n [47] at 1; *see* Bennett Decl. ¶¶ 4, 6.) Plaintiff notes that he was the oldest employee at OFCCP when he was terminated, he was one of the few OFCCP Caucasian male employees, and he was the only professional OFCCP employee terminated for cause in the last 15 years. (Bennett Decl. ¶¶ 6, 18; Plaintiff's Cplt. [1] ¶ 29.) However, "a plaintiff's mere speculations are 'insufficient to create a genuine issue of material fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment'" *Brown v.*

*Brody*, 199 F.3d 446, 459 (D.C. Cir. 2009) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988); *Fields v. Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) (stating that self-serving testimony does not create genuine issues of material fact). In addition, in order to avoid summary judgment, plaintiff must produce evidence that rebuts the legitimate non-discriminatory reason defendant asserts as the basis for plaintiff's removal. *Marcelus v. CCA of Tenn., Inc.*, 691 F. Supp. 2d 1, 19 (D.D.C. 2010). As defendant points out, plaintiff is unable to meet this burden because his self-serving assertions about the OFCCP's environment are "made without any statistical or other reliable evidentiary support, and cannot be reconciled with the fact that Plaintiff's own supervisors were among this alleged disfavored group." (Def.'s Reply [52] at 3.) Accordingly, the Court will now address in turn the evidence (other than plaintiff's self-serving statements) that plaintiff offers to support this supposed discriminatory attitude on the part of OFCCP.

First, plaintiff offers the affidavit of Linda Copening, plaintiff's former union representative and co-worker, which stated that OFCCP managers Harold Busch and Joseph Jackson encouraged her to push plaintiff and Ms. Harris into retirement. (Copening ROI Aff. at 3; Copening Supp. ROI Aff. at 2-3.) These managers supposedly told Ms. Copening that the pressure "to force Ms. Harris and Mr. Bennett into retirement" was coming from the OFCCP "front office." (Copening Supp. ROI Aff. at 2.) Mr. Jackson told Ms. Copening that he had been ordered to place Ms. Harris on a PIP by his supervisor Ms. Dalzell-Finger and that when he was reluctant to do so he was placed on a PIP himself. (*Id.*; *accord* Fernandez ROI Aff. ¶ 7.) As defendant points out, however, plaintiff acknowledges that he lacks any evidence of age-based animus on the part of the decisionmaker Ms. Deutermann, who was in her mid-60's and only a

few years younger than plaintiff when she made the decision to terminate him.[5] (Def.'s Reply [52] at 22; Deutermann Decl. ¶ 19.) This is important because our Circuit has found that the relevant question is whether the actual decisionmaker rather than another employee harbored discriminatory animus against the aggrieved employee. *See Holbrook v. Reno*, 196 F.3d 255, 260-61 (D.C. Cir. 1999) (alleged bias of subordinate cannot be considered as evidence of discrimination where "the record contains no evidence" that the subordinate participated in the decision at issue). Ms. Deutermann stated that she made the decision to remove plaintiff on her own and without any pressure or influence from other managers or personnel. (Deutermann Decl. ¶ 17.) In addition, even if it is true that the "front office" of the OFCCP wanted plaintiff and Mr. Bennett gone, this is not necessarily a result of age-based discrimination against them but could be a result of their possible lack of technical skills. (*See* Bennett Dep. Ex. A at 79 (recounting plaintiff's assertion that a senior manager of the OFCCP stated at an all staff meeting that "the system was getting very technical, and the people who couldn't do the new technical thing … were going to be weeded out."; Bennett Decl. Att. C at B1-2 (EEO Counselor's Report stating that "Ms. Deutermann said that they had developed a new matrix for 'Quality Analysis and Evaluation of Field Compliance Activities' and that [plaintiff] was not able to grasp the concept.").)

Furthermore, as defendant points out, the actual remarks by these OFCCP managers are not identified in the affidavit and there is not any information concerning when these remarks were made, so this Court has no way to know the context in which these alleged remarks were made or what was actually said since plaintiff offers no evidence in this vein. *See, e.g., Thomas v. Ghandi*, 650 F. Supp. 2d 35, 40 (D.D.C. 2009) (stating that the court must not look at the use

---

[5] Defendant points out that Mr. Bennett arguably "conceded in his deposition that he had no basis to believe that Ms. Deutermann harbored any discriminatory animus toward him." (Def.'s Reply [52] at 8; Bennett Deposition 92-93.)

of the term "retire" in isolation but rather in the context in which the statement was made to determine if it evidences age-based animus, and finding the context to negate such an inference), *aff'd*, 2010 WL 2203177 (D.C. Cir. May 24, 2010) (affirming the District Court's decision, including the focus on the context in which the alleged statement was made); *Elam v. D.C. Fire & EMS Dept.*, 2005 WL 1903557 (D.D.C. 2005) (finding that rumors without substantiation regarding their substance, source, or time frame failed to raise an inference of discrimination); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (stating that affidavits containing "rumors, conclusory allegations and subjective beliefs" are insufficient to establish a claim of discrimination as a matter of law). Accordingly, these unsubstantiated rumors regarding the alleged discriminatory attitude of the "front office" of the OFCCP do not help plaintiff's case.

Second, another OFCCP employee, Susan Bowmaster, who was 61 years old and had 36 years of government service at the time, testified that she did not receive assignments commensurate with her knowledge or experience, which she attributed to efforts by senior management to remove older employees because of "rumors circulating throughout the Operations Division" to that effect. (Bowmaster ROI Aff. ¶ 7.) This is clearly a self-serving statement which is without substantiation and does not create an issue of material fact. *See e.g. Sloan v. Urban Title Services, Inc.*, 689 F. Supp. 2d 94, 122 n. 6 (D.D.C. 2010) ("[U]nsubstantiated beliefs amount to nothing more than hearsay, self-serving statements and speculation, and are insufficient as such to defeat summary judgment."); *Boles v. Dansdill*, 361 Fed. Appx. 15, 18 (10th Cir. 2010) (Conclusory and self-serving affidavits are insufficient to create a genuine issue of material fact.). In addition, this evidence tends to negate a finding of age-based discrimination on defendant's part as plaintiff has not suggested or shown that this senior employee was forced out (as he supposedly was) by defendant. So, like the testimony of

Ms. Copening, these unsubstantiated rumors and Ms. Bowmaster's self-serving statement do little to help plaintiff's case.

Third, another OFCCP employee, Armando Fernandez, testified that he was pressured to retire by Mr. Busch, and this was believed by another employee Ash Cambetta to be because Mr. Fernandez was the only Hispanic employee in the division. (Fernandez ROI Aff. ¶ 7; Cambetta ROI Aff. at 3.) However, Mr. Fernandez also testified that Mr. Busch told him that he should retire because "he complained too much" rather than for a discriminatory reason. (Fernandez ROI Aff. ¶ 7.) In addition, this is merely one employee's opinion about another employee's motivations for doing something and as such is pure speculation which surely does not rise to the level of proof a reasonably jury would need to find a department-wide discriminatory attitude. *See Mitchell*, 964 F.2d at 584-85; *Sloan*, 689 F. Supp. 2d at 122 n. 6. Also, even if this Court were to believe that Mr. Busch did pressure Mr. Fernandez to retire, plaintiff has offered no evidence suggesting, much less proving, that this was on account of his race. Furthermore, Mr. Busch was not a decisionmaker in either plaintiff's or Ms. Harris' case, and therefore his alleged discriminatory bias even if true is irrelevant to this case. *Holbrook*, 196 F.3d at 260-61. Mr. Fernandez also testified that it was his opinion that plaintiff's placement on the PIP was unwarranted. This opinion is without any factual basis, however, and as defendant points out, Mr. Fernandez himself admitted that he was not familiar with any of plaintiff's work. (Def.'s Reply [52] at 24; Fernandez ROI Aff. ¶ 7.) Thus, this speculative testimony by Mr. Fernandez does not help plaintiff's case.

Fourth, Ash Cambetta, a long time co-worker of plaintiff, testified under oath in his affidavit that it "was widely rumored that Branch Chiefs were under pressure to 'get rid'" of plaintiff and Ms. Harris because they each had 40+ years of service. (Cambetta ROI Aff. ¶ 9.)

The same rumor analysis discussed above applies, and moreover, Mr. Cambetta admitted that this rumor "cannot be proved." *Id; Thomas*, 650 F. Supp. 2d at 40 (rejecting as evidence of discrimination a third party statement alleging the existence of rumors of age-based animus). In addition, Mr. Cambetta stated in his affidavit that the "Division of Program Operations had a history of nurturing a vicious environment of racial and gender polarization. Managers in the Division built their lucrative careers on this. As a result, there was an inhospitable environment towards employees who were not African-American." *Id.* This statement has not been backed up by plaintiff with any real evidence, and as such it is no more effective in proving a discriminatory attitude on defendant's part than the previously discussed rumors that plaintiff alleges existed.

The only evidence besides these rumors that plaintiff offers to prove age-based discrimination against him is the supposedly disparate treatment of himself and Ms. Harris, and defendant has aptly shown that a reasonable jury would conclude that plaintiff and Ms. Harris were not similarly situated, and even if a jury concluded that they were similarly situated, plaintiff's treatment in isolation cannot be enough to prove a case of discrimination. *See supra* Part III.B.2.A; *Marcelus v. CCA of Tenn., Inc.*, 691 F. Supp. 2d 1, 19 (D.D.C. 2010) ("One instance of disparate treatment hardly constitutes a pattern that would justify an inference of intentional discrimination[.]"). In short, none of this supposed evidence of a discriminatory attitude on the part of the OFCCP is competent to rebut the legitimate non-discriminatory reason for plaintiff's termination that defendant has offered.

### D. Evidence by plaintiff of positive evaluations by employer

Our Court of Appeals has found in at least two cases that employment discrimination plaintiffs had established enough evidence of pretext by vigorously disputing the employer's

stated reasons for terminating the aggrieved employee. *George v. Leavitt*, 407 F.3d 405, 413-14 (D.C. Cir. 2005); *Desmond v. Mukasey*, 530 F.3d 944, 963-64 (D.C. Cir. 2008). In both of these cases the defining features were positive evaluations of the plaintiff's performance as well as testimony of co-workers that tended to shed doubt on the employer's statement about the plaintiff's poor performance. *See Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 10 (D.D.C. 2008). Both of these features are present in this case, but this Court believes they are insufficient to prove pretext.

First, plaintiff's union representative Ms. Copening stated in her affidavit that:

"up until the time [plaintiff] was put on a PIP, he had received good evaluations. He had no reason to believe there were any deficiencies in his work. Management did not, orally or in writing, counsel him regarding his performance. He was a long tenured employee who had contributed much to the program over the years."

(Copening ROI. Aff. at 2-3.) Ms. Copening also stated that plaintiff "had received Fully Successful ratings for all periods leading up to the issuance of the PIP." (Copening Supp. ROI Aff. at 2.) Second, Harold Busch, the Director of DPO that was responsible for the Systemic Discrimination Project, expressed through an email the thanks of the OFCCP Deputy Director William Doyle to staff members for work on the project. Plaintiff was included in this email which praised the staff's "great work" and the "quality of the work" on the project.[6] (Deutermann Dep. Ex. 8.) Plaintiff suggests implicitly that both of these shed doubt on the legitimacy of the reason that defendant gave for terminating plaintiff (Pl.'s Opp'n [47] at 9-10.) However, there are several flaws in this assertion.

To start, the plaintiffs in the abovementioned *Leavitt* and *Mukasey* cases vigorously disputed the validity of the reasons cited by the employer for their dismissals (i.e. that their

---

[6] It is interesting that plaintiff alleges that Mr. Busch was one of the individuals in management who likely discriminated against him (Bennett Dep. 66:18-77:16), when plaintiff also cites this email by Mr. Busch as basically the sole piece of documentation by a superior to support the idea that he was a good worker.

performance was not as deficient as the employer claimed), whereas plaintiff here never disputed the merits of the Department's legitimate non-discriminatory reason for terminating him, namely that he failed his PIP. (*Leavitt*, 407 F.3d at 413-14; *Mukasey*, 530 F.3d at 963-64; Deutermann Decl. ¶ 3.) Rather, as discussed earlier, the plaintiff here faulted the PIP itself as being subjective and arbitrary. *Supra* Part III.B.2.A. So, while the plaintiffs in *Leavitt* and *Mukasey* were able to survive summary judgment because their refutations created a genuine issue of material fact regarding the reasons cited by the employers for their dismissal, plaintiff in this case did not because he failed to rebut the assertions made by the Department that his performance was in fact deficient. (Deutermann Decl. ¶¶ 5-6.) In addition, although Ms. Copening might be correct in her statement that plaintiff did not receive poor evaluations leading up to the PIP period, it is also true that the Systemic Discrimination Project was a new project that plaintiff could apparently not handle and it is undisputed that he was inept at completing his work associated with the Project. (Deutermann Dep. Ex. 12.) Finally, plaintiff's supervisor testified in her deposition that, in the months prior to placing plaintiff on the PIP, his performance seemed to be deteriorating. (Def.'s Motion [35-1] at 14.) So, while plaintiff may have been a stellar employee during the years prior to 2004, it is undisputed that his performance deteriorated and became unacceptable, and also undisputed that plaintiff was given opportunities to improve but did not do so. (Deutermann Dep. Ex. 12 at Att. 7.)

Furthermore, even taking the email from Mr. Busch at face value, it was sent on June 27, 2004, praised work that was mostly completed prior to the PIP period (which lasted from May 7, 2004 through November 24, 2004) and does not involve plaintiff's performance during the entire PIP on which the decision to remove plaintiff was based. (Deutermann Dep. Ex. 8; Deutermann Decl. ¶ 2.) In addition, the email was not directed specifically to plaintiff, but was seemingly sent

to all of the employees in the office who worked on the Systemic Discrimination Project. (Deutermann Dep. Ex. 8.) Also, the email came from a senior manager who was likely not involved with the day to day work product of the recipients of the email, which is important because the record shows that the work product of compliance officers like plaintiff often went through substantial revision and editing by supervisors before it was passed along to upper management. (*See* Bennett Decl. ¶ 13.) In other words, this praise for the "quality of the work" of the email recipients concerns work product that went through substantial supervisory revision before it made its way to upper management, and so the impact that plaintiff gives the email could very well be overstated.

All in all, based on the evidence and the case law, no reasonable jury could find pretext based on plaintiff's termination despite the possibility that he was an acceptable worker prior to the time leading up to the PIP period.

## E. Plaintiff's faulting of Ms. Deutermann

Plaintiff has made numerous arguments to the effect that Ms. Deutermann must have discriminated against him because she did not review the specific case files that were assigned to plaintiff during the PIP period on which plaintiff's supervisor based the removal decision. (Pl.'s Opp'n [47] at 3, 13-15.) In particular, plaintiff argues that Ms. Deutermann's statement that "she did not review the specific case files" and the fact that she did not remember when asked in her deposition how much time she spent reviewing plaintiff's work in any of his cases were both evidence that she arbitrarily terminated him as a result of discrimination rather than performance deficiencies. (Deutermann Dep. at 51:6-53:16; Pl.'s Opp'n [47] at 3, 14.) Plaintiff overstates its case for a number of reasons.

First, plaintiff's citation to the answer Ms. Deutermann gave in her deposition that she "did not review the specific case files [of plaintiff during the PIP]" is misleading because the question to which this answer was given asked Ms. Deutermann "[d]o you recall the documentation that was in the Dow file." (Deutermann Dep. 53:14-16; Pl.'s Opp'n [47] at 3, 14.) This Dow file was only one of several files that plaintiff was responsible for during the PIP period, Ms. Deutermann's deposition testimony refers to other case files of plaintiff's that she did review, and thus Ms. Deutermann's lack of review of this one Dow file is far from the utter lack of oversight that plaintiff suggests took place. (Pl.'s Opp'n [47] at 3, 14; Deutermann Dep. 55:16-56:15, Ex. 2 at 000000295. Also, regarding the Dow file and contrary to plaintiff's insinuation, Ms. Deutermann did review "the submissions of [plaintiff's] work for the Dow" file and found that plaintiff gave "inconsistent responses which would result in incorrect data being recorded for analysis." (Deutermann Dep. Ex. 2 at Bennett 000000294.)

In addition, defendant pointed out Ms. Deutermann's testimony stating that she examined the examples of plaintiff's work that were attached to the Proposal to Remove when making her decision and determined that they substantiated plaintiff's supervisor's assertions of plaintiff's poor performance. (Def.'s Reply [52] at 17; Deutermann Decl. ¶ 5; Deutermann Decl. Ex. 1 at Bennett 00293-00294.) Specifically, some of these attachments included work by plaintiff that was internally inconsistent, contained short-hand responses by plaintiff when he knew he was supposed to write in full sentences (which should have been "second nature" to plaintiff as a Senior Compliance Officer), and several other deficiencies in plaintiff's work product. (Def.'s Reply [52] at 16-17; Deutermann Decl. Ex. 2 at 00013-00014, 00033-00034, 00109; Def.'s Mot. [35] Ex. B at 67.)

Furthermore, as discussed earlier, Ms. Deutermann believed that her role as the deciding official was limited to reviewing the Proposal to Remove as a stand alone document, and plaintiff has not offered evidence suggesting that this understanding was incorrect. (Deutermann. Decl. ¶ 3; *supra* Part III.B.2.A.)  So, contrary to plaintiff's assertion that Ms. Deutermann had no knowledge of plaintiff's work, Ms. Deutermann reviewed plaintiff's work that was attached to the Proposal to Remove and was able to independently substantiate plaintiff's supervisor's findings present in the Proposal to Remove that described plaintiff's numerous performance deficiencies. (Deutermann Dep. Ex. 12.)

Also, regarding the fact that Ms. Deutermann didn't remember how much time she spent reviewing plaintiff's work, this deposition took place on September 22, 2009, while the events in question took place in 2004 and 2005, a full four year difference, so it isn't unheard of that a person would not remember these details after four years. (Deutermann Dep. 1:13; Bennett Decl. ¶¶ 3, 8, 14, 17, 19, 21, 22.) Furthermore, as indicated above, plaintiff has shown that Ms. Deutermann did review plaintiff's work product as an incident to her evaluation of the Proposal to Remove, and plaintiff has not established any rule or regulation mandating a specific amount of time Ms. Deutermann was required to review plaintiff's work product.

In addition, plaintiff complained that Ms. Deutermann erred when she did not terminate Ms. Harris or place her on another PIP when she was within her authority to do so. (Pl.'s Opp'n [47] at 17.) As defendant pointed out, however, Ms. Deutermann has stated that it was her understanding that her only role in the process was to make a determination on the proposed removal of Ms. Harris, and Ms. Deutermann's undisputed testimony was that it was up to Ms. Harris' immediate supervisor to take any further action (such as placing her on another PIP)

following the decision on the Proposal to Remove. (Def.'s Reply [52] at 18; Deutermann Dep. at 101:10-102:9.)

Finally, regarding the citation to the narrative portion of the Harris Proposal to Remove in which Ms. Harris' supervisor asserted that "none of the work [Ms. Harris] submitted was acceptable on the first submission," the same reasoning applies as was submitted earlier in this opinion in the "similarly situated" section, namely that the supervisor's documentary support was inadequate to support this assertion. (*Supra* Part III.B.2.A.; Def.'s Reply [52] at 18-19; Pl's Opp'n [47] at 26.). In particular, as defendant notes, of the 11 case files that Ms. Harris worked on during the PIP period, her supervisor only referred to 4 of them in the Proposal to Remove as being problematic, so the documentary support is inadequate to support the "none of the work … was acceptable" assertion. (Def.'s Reply [52] at 19; Deutermann Decl. ¶ 11, Ex. 7.) In addition, as defendant points out, equally misleading is plaintiff's reference to Ms. Deutermann's statements that "she had no basis for failing to discharge Ms. Harris" and that she had no "reason to doubt" assertions made by Ms. Harris' supervisor about Ms. Harris' performance. (Def.'s Reply [52] at 20; Deutermann Dep. at 94:15-99:8; Deutermann Decl. ¶ 16.) As previously discussed, although Ms. Deutermann had no reason to doubt the supervisor's assertions, it was Ms. Deutermann's understanding that she was to review the Proposal to Remove as a stand alone document that must be substantiated and documented with evidence, and in the case of Ms. Harris as contrasted with plaintiff the claims in the Proposal to Remove were not properly substantiated and were largely based on work that was completed prior to the initiation of the PIP rather than during the PIP period. (Deutermann Decl. ¶¶ 3, 10, 15, 16; *supra* Part III.B.2.A.) Thus, contrary to plaintiff's assertion that Ms. Deutermann said she had no basis for failing to discharge Ms. Harris, Ms. Deutermann really said that there was inadequate documentation for

her to do so. (Deutermann Decl. ¶¶ 9-15, Exs. 6-7; Deutermann Dep. at 107:3-10.) Accordingly, plaintiff's faulting of Ms. Deutermann in this decisionmaker role is misplaced and does not prove pretext on the part of defendant Department.

### 3. Plaintiff Cannot Prevail on his ADEA Claim

As stated earlier, the Supreme Court has held that "[a] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009). It is not enough that age was one motivating factor in an adverse employment action; rather, it must be the case that the adverse action would not have occurred in the absence of age as a consideration. *See id.* at 2350. Plaintiff cannot prevail under this exacting standard because defendant has demonstrated that plaintiff was terminated as a result of his poor performance during the PIP period, and plaintiff has not disputed this poor performance. (Def.'s Reply [52] at 12; Deutermann Decl. ¶¶ 5- 6.) In addition, as defendant points out, plaintiff's comparison of himself to Ms. Harris does not help plaintiff's case of age discrimination since Ms. Harris was only three years younger than plaintiff but was not terminated even though she also failed her PIP. (Def.'s Reply [52] at 22; Def.'s Mot. for Summ. J. [35] at 18.) Furthermore, plaintiff has not proven that Ms. Deutermann as the decisionmaker harbored any discriminatory animus against him, and plaintiff has not successfully refuted the statement Ms. Deutermann made in her deposition regarding her insulation from other managers in the Department and that she made the decision to remove plaintiff on her own, without any assistance or pressure from anyone else. (Deutermann Decl. ¶¶ 17-19.) Accordingly, since plaintiff's poor performance was certainly a factor in defendant's decision to terminate him, no reasonable jury could conclude that age was the "but for" cause of that decision.

*     *     *

In sum, the Court concludes that defendant met its burden in proferring a legitimate non-discriminatory reason for its decision to terminate plaintiff's employment. In addition, the Court concludes that plaintiff has failed to prove that the Department's non-discriminatory justification for his termination was pretext for unlawful discrimination. Accordingly, the Court will grant the Department's motion for summary judgment on plaintiff's Title VII and ADEA claims.

**V.**     **<u>CONCLUSION</u>**

For the foregoing reasons, defendant Department's Motion for Summary Judgment [35] shall be GRANTED.

A separate order shall issue this date.

**<u>Date</u>**

July 22, 2010.

_____/s/_____
ROYCE C. LAMBERTH
Chief Judge
United States District Court